| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v.  ) | Criminal No.: 1:24-cr-00045-SDN |
| ) | |
| **BENJAMIN BROWN**  ) | |
| ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

NOW COMES Defendant Benjamin Brown, by and through undersigned counsel, who respectfully asks this honorable court to consider the following in its sentencing analysis in this matter.

### The Legal Standard

Applying the United States Sentencing Guidelines are no longer mandatory.

Post <u>United States v. Booker</u>, the United States Sentencing Guidelines are advisory in nature:

> We answer the question of remedy by finding the provision of the federal sentencing statute that makes the Guidelines mandatory incompatible with today's constitutional holding. We conclude that this provision must be severed and excised, as must one other statutory section which depends upon the Guidelines' mandatory nature. So modified, the Federal Sentencing Act, see Sentencing Reform Act of 1984, as amended makes the Guidelines effectively advisory. United States v. Booker, 543 U.S. 220, 245 (2005).

As part of its Sixth Amendment remedy, the Supreme Court also imposed a reasonableness standard for the review of sentences imposed after Booker. <u>Id</u>. at 263. While it would take <u>Rita v. United States</u>, 1551 U.S. 338, (2007), Gall v. United States, 552 U.S. 38, (2007), and <u>Kimbrough v. United States</u>, 552 U.S. 85, (2007) to define the contours of the reasonableness standard of review, the net result is a significantly expanded sentencing discretion. The First Circuit's response to Kimbrough was to hold that the District Courts were no longer constrained by the policy behind the Guidelines. The First Circuit recognized that the

District Court was not required to impose the sentence required by the Guidelines:

> In a last-ditch effort to turn the tide, the government suggests that the 144-month sentence is unreasonable because it placed the defendant within the GSR that would have obtained had he not been a career offender. In the government's view, this outcome effectively nullifies Congress's intent to punish recidivism more severely. See 28 U.S.C. § 994(h) (directing the Sentencing Commission, with respect to career offenders, to "assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized"). We believe that this suggestion is wide of the mark. The Supreme Court's recent decision in Kimbrough, opened the door for a sentencing court to deviate from the guidelines in an individual case even though that deviation seemingly contravenes a broad policy pronouncement of the Sentencing Commission. Here the district court grounded the defendant's sentence in case-specific considerations, which is the accepted practice in the post-Gall world. United States v. Martin, 520 F.3d 87, 91 (1st Cir 2008). (Internal citations omitted).

The Court, of course, should apply the standards mandated by 42 USC 3553:

> (a) FACTORS TO BE CONSIDERED IN IMPOSING A SENTENCE.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
> (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet

to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
(5) any pertinent policy statement—
(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act
of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.[1]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

**Relevant Background**

Defendant Benjamin Brown is a now 47 year old man. Mr. Brown was accused and has accepted responsibility and pled guilty to making threatening interstate communications in violation of 18 U.S. Code § 875(c). He accepts the Government's representations and the revised presentence report presentations as to the nature of the offense. Mr. Brown watched videos that had been going viral due to their objectionable nature, and he made threatening comments based on what he saw. Those comments flagged YouTube's community standards protocol and were removed immediately.

In considering the nature and circumstances of the Defendant pursuant to 42 USC 3553, the court should take particular note of the Defendant's early life. He appears the product of not only a harsh and austere upbringing as well as a physically abusive stepfather. Mr. Brown had a strained relationship with his biological father, a father that largely neglected Mr. Brown's emotional needs. This home environment instilled in Defendant a certain level of anxiety and apprehension that affect him to this day. Defendant attended a residential facility for kids with behavioral issues and learning disabilities, and he was hospitalized for mental health concerns once when he was 12. He has a relationship with his mother currently that is positive and will be a good resource for him going forward. While he did not have a strictly positive relationship

with his mother at all points of his life, he currently relies on her and she helps him to understand and better process his emotions. She will continue to be a positive resource for Mr. Brown going forward.

Defendant Benjamin Brown has maintained gainful employment since his release from custody in September of 2024. He works hard, and he has regular diners that know him and he greets by name. He has worked hard to build relationships at his place of employment that he hopes will serve him throughout whatever punishment this Court imposes and beyond.

Mr. Brown was arrested on March 11, 2024. He was released from custody on home confinement on September 13, 2024. Mr. Brown has approximately 6 months and 2 days of credit for time served under his belt. During his roughly 13 months of home confinement, Mr. Brown ran into issues stemming from the hustle-and-bustle nature of the restaurant industry and the scheduling requirements of his supervision. Mr. Brown's schedule was initially subject to minor changes when the restaurant was busy or when the restaurant was slow, causing him to sometimes arrive at work earlier than his pretrial supervisor expected due to minor schedule changes at work. There was another occasion where Mr. Brown did not have a schedule to submit to his pretrial supervisor because one was not made for him by his employer by the deadline set by his pretrial supervisors. However, after some tinkering with his schedule with his employer in an attempt to get more consistent arrival and departure times from his place of employment as well as more consistent schedules, those supervision violations largely disappeared. He had two incidents where he had failed to attend a mental health appointment, but those incidents were unintentional, and through more careful calendaring, he was able to address them moving forward. In each of Mr. Brown's supervision violations, he has made active steps to fix them so that they would not continue.

**Criminal History Computation**

The Defendant has a Criminal History Category of I with a criminal history score of 0.

### Offense Level Computation

The Guideline calculation of a total offense level of 12, a Criminal History Category of I and a guideline range of 10-16 months.

### Reasons to Justify a Departure from the Guidelines

Benjamin Brown has made several positive steps since his release from custody to better himself. He has maintained gainful employment at Ruby Tuesdays in Waterville since September 13, 2024. He is a hard worker. A deviation from the guideline range that would allow Mr. Brown to continue with his employment would be beneficial to not only his family, in order to keep the income stream from Mr. Brown's employment intact, but to his larger community as well, given Mr. Brown's hard work ethic and the service he provides the individuals who frequent the restaurant. If Mr. Brown were given credit for the 6 months and two days he has already served and a period of supervised release were imposed upon him, he would be able to continue providing a steady source of income for himself, his wife Wendy Flores, his son Eric Alexander, and his daughter Mandy Brown alongside. While Mr. Brown is not the only earner in his household, he makes a significant contribution.

Mr. Brown is currently scheduled to attend therapy sessions. If the court departed from the guidelines and issued a sentence of 6 months and 2 days, giving Mr. Brown credit for the time he has already served, 6 months and 2 days, Mr. Brown would be allowed to continue with his scheduled therapy in a manner that causes the minimum amount of disruption. Mr. Brown is willing to and plans on engaging with his therapy sessions to the best of his ability, and a disruption in that process could reset some of the progress he has made with his own journey with his mental health. Mr. Brown has made some real, tangible progress in therapy, and hopes to continue making progress through active participation with his mental health providers.

For those reasons, it is the Defense's position that a downward departure from the guideline range of 10-16 months is warranted in this case. A departure would better facilitate Mr. Brown's rehabilitation while simultaneously serving the deterrence purpose of criminal sentencing through the imposition of a 6 month and two-day sentence followed by 3 years of supervised release.

## CONCLUSION

Applying 42 USC 3553, the Court should find that Mr. Brown early acceptance of responsibility, and his sincere and demonstrated desire to improve himself are reasons to depart from the Guideline calculations and impose a sentence of 6 months and two days, with credit for time served, and a period of supervised release of 3 years. Such a sentence reflects the law's requirements to impose a just sentence which reflects the seriousness of the offense, deters criminal conduct, protects the public, and provide the Defendant with educational and rehabilitative services.

                                                Respectfully submitted,

                                                Connor M. Herrold
                                                Steve Smith Trial Lawyers

Dated: September 30, 2025          BY: /s/ *Connor M. Herrold*
                                                Connor M. Herrold, Esq.
                                                Counsel for the Defendant